UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| OMAR WARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-CV-48-ZMB |
| ) | |
| ROBERT J. JORDAN, JR., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Clay Stanton's Motion to Dismiss. Doc. 16. After Plaintiff Omar Ware voluntarily dismissed his official-capacity claims against Stanton, Doc. 19, all that remains are his individual-capacity claims under 42 U.S.C. § 1983. Stanton contends that qualified immunity requires dismissal of these claims. After drawing all reasonable inferences in Ware's favor, the Court finds his allegations sufficient to overcome qualified immunity as to the failure-to-supervise and failure-to-protect claims at this early stage of litigation. However, Ware has failed to show that any failure to train prison officials proximately caused his injuries, entitling Stanton to qualified immunity on that front. Accordingly, the Court grants in part and denies in part Stanton's Motion to Dismiss.

## BACKGROUND

### I.   Factual Background

The following allegations from the Complaint are accepted as true for purposes of this motion. In 2023, Ware was incarcerated at the Northeast Correctional Center (NECC) in Bowling Green, Missouri—a prison run by the Missouri Department of Corrections (MDOC). Doc. 1 ¶¶ 1–2. At all relevant times, Defendant Robert Jordan was a correctional officer at NECC, and Stanton was both his supervisor and warden of the facility. *Id.* ¶¶ 3–4. John Does 1–5 were NECC correctional officers who shared responsibility for supervising Jordan. *Id.* ¶ 5.

Ware alleges that Jordan sexually assaulted him at least six times from April to June 2023. *Id.* ¶¶ 20–21. Jordan similarly used his position to sexually assault other inmates. *Id.* ¶¶ 22–23, 28–29. Ware claims that Stanton and other supervisors knew about this pattern of abuse. *Id.* ¶¶ 23, 31–32, 34. In particular, Ware gave prison supervisors an inappropriate letter he received from Jordan, and NECC staff witnessed an episode of Jordan assaulting Ware on surveillance video. *Id.* ¶¶ 12–14, 24–27. Nevertheless, Ware claims, the supervisors never reported the abuse or disciplined Jordan. *Id.* ¶ 42.

MDOC has a zero-tolerance policy for sexual abuse, including consensual sexual contact. *Id.* ¶ 38–40. NECC also has a policy for management "to determine the appropriate level of access to the facility for all employees and to respond to all grievances or complaints made by inmates." *Id.* ¶ 33. Stanton and the John Does 1–5 were specifically responsible "for ensuring that employees at NECC received training on the policies and procedures of [MDOC], that staff strictly adhered to site operating procedures and plans, and that staff followed the policies and procedures of [MDOC] while working at NECC." *Id.* ¶ 36.

## II. Procedural Background

Ware filed this case in July 2024. *Id*. His Complaint includes section 1983 claims against Stanton, Jordan, and John Does 1–5, as well as two state-law tort claims against Jordan. *Id.* ¶¶ 45–87. Ware brought claims against Defendants in both their official and individual capacities. *Id.* ¶¶ 3–5.

While collapsing his section 1983 claims against Stanton in a single count, Ware identifies 12 overlapping constitutional violations:

> 62. Defendant Stanton . . . was deliberately indifferent to the substantial risk of harm and violated Plaintiff's Fourth Amendment, Eighth Amendment, and Fourteenth Amendment rights by:
>
> a. Failing to implement and[] enforce adequate policies and procedures for the care, supervision of NECC correctional officers including Defendant Jordan;
>
> b. Failing to properly respond to complaints of sexual harassment, verbal harassment, and sexual assault by Defendant Jordan;

2

    c. Failing to properly investigate complaints of harassment and sexual abuse of inmates including Plaintiff;

    d. Failing to properly train NECC staff about the Prison Rape Elimination Act and MODOC policies;

    e. Failing to train and[] instruct NECC employees, agents and servants to properly supervise and monitor inmates;

    f. Failing to train and[] instruct NECC employees, agents, and servants to report inappropriate relationships or interactions between NECC correctional officers and inmates;

    g. Failing to remove Defendant Jordan from working with inmates;

    h. Failing to ensure there was sufficient supervision of the facility so that Defendant Jordan could not take inmates into private and unmonitored areas;

    i. Failing to monitor the surveillance cameras to ensure sexual assaults did not occur at NECC;

    j. Failing to implement and enforce policies that kept inmates from being sexually assaulted or harassed;

    k. Failing to implement and enforce existing policies and procedures including failing to take action knowing that Defendant Jordan had been accused of sexual harassment, inappropriate relationships, and sexual assault by NECC inmates; and,

    l. Failing to properly monitor staff by allowing Defendant Jordan to sexual[ly] abuse Plaintiff for months while Plaintiff was in the custody and care of the State of Missouri.

*Id.* ¶ 62. These allegations appear to fall into three broader categories of failure to supervise, failure to train, and failure to protect. *See* Doc. 17 at 6, 9; *see also* Doc. 18 at 7, 10–11, 15.

    Stanton timely moved to dismiss all claims against him, raising sovereign immunity as a defense to the official-capacity claims, invoking qualified immunity for the individual-capacity claims, and arguing that Ware did not adequately allege the elements for a failure to train or supervise. Doc. 16. In response, Ware voluntarily dismissed the official-capacity claims but opposed the dismissal of the individual-capacity claims. Docs. 18–19. Because the deadline for Stanton's reply has long since passed, *see* E.D. MO. L.R. 4.01(c), the motion to dismiss is ripe for ruling.

3

**LEGAL STANDARD**

I.  **Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II.     Qualified Immunity

"Government employees sued in their individual capacities under § 1983 may assert the affirmative defense of qualified immunity." *Cannon v. Dehner*, 112 F.4th 580, 585 (8th Cir. 2024) (citation omitted). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (citation omitted). As such, qualified immunity shields a government official "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (quotation omitted). Moreover, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "Thus, the doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." *Id.* (quotation and alterations omitted).

## DISCUSSION

In his Motion to Dismiss, Stanton largely quibbles with the allegations in the Complaint. Stanton insists he had no advanced notice of unlawful behavior and that he swiftly removed Jordan upon hearing reports of misconduct. Doc. 17 at 5, 6. He also insists that, as warden, he had no direct supervisory authority over Jordan. *Id.* at 6. That may all be true. The problem is these facts are not properly before the Court, and all inferences must be drawn in favor of Ware at this early stage. Viewed through this lens, the Complaint sufficiently alleges failure-to-supervise and failure-to-protect claims against Stanton. However, Ware fails to show that any purported failure to train corrections officers was the proximate cause of his injuries, so the Court dismisses that claim.

I.      **Failure to Supervise**

Stanton resists supervisory liability by claiming that he lacked notice of any unlawful conduct and that he promptly took action when he learned of allegations against Jordan. Doc. 17 at 9. But his argument would require the Court to ignore the standard of review by discounting Ware's allegations, accepting facts outside the Complaint, or both. Thus, at this stage of the case, Stanton's assertion of qualified immunity as to his failure to supervise falls short.

To establish a section 1983 claim for failure to supervise, Ware must plead facts that show that Stanton "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Ware]." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (internal quotation marks omitted). Allegations of generalized notice are insufficient; notice requires a pattern of conduct very similar to the conduct giving rise to liability. *Jennings v. Nash*, 2020 WL 234678, at *23 (W.D. Mo. Jan. 15, 2020) (internal citations omitted). Deliberate indifference is present when "in light of the duties assigned to specific officers or employees the need for more or different . . . supervision . . . is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor] can reasonably be said to have been deliberately indifferent to the need." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017) (citation omitted).

Stanton primarily challenges the notice element. Specifically, he claims that the Complaint "fails to show that [he] had notice that any alleged unlawful events were happening." Doc. 17 at 9. But Ware expressly alleges that Stanton knew Jordan had engaged in a pattern of sexual misconduct,[1]

---

[1] As a threshold matter, Jordan's alleged sexual assaults of Ware are unconstitutional acts. *See Glover v. Paul*, 78 F.4th 1019, 1022 (8th Cir. 2023) ("As a general proposition, it is clearly established that the sexual assault of an inmate by a guard violates the inmate's constitutional rights.") (quotation omitted).

6

which included multiple instances of sexual assaults against Ware and other inmates at the NECC. Doc. 1 ¶¶ 4, 12–14, 21–23, 31, 34, 61. While the Complaint does not specify precisely when Stanton became aware of this abuse,[2] it implies that he knew about Jordan's other victims before Ware's assault. *Id.* ¶ 31. Moreover, it directly asserts that Stanton "ignore[d] reports and complaints about" Jordan and "allow[ed] [him] to sexually harass and assault [Ware]. *Id.* ¶ 61. Because the Court must draw all reasonable inference in Ware's favor at this stage, it is constrained to accept that Stanton knew about Jordan's sexual abuse before he assaulted Ware. *See Cook*, 952 F.3d at 938; *see also Walton v. Dawson*, 752 F.3d 1109, 1124–25 (8th Cir. 2014). Thus, the pleaded facts establish that Stanton had notice of a pattern of unconstitutional acts committed by his subordinate.

As for deliberate indifference and remedial action, Stanton claims that he placed "Jordan on administrative leave and separated him from the institution" as soon as he learned there were allegations of misconduct. Doc. 17 at 5. Stanton's account, if true, indicates that he took sufficient remedial action as Jordan's supervisor. However, as Ware correctly notes, the Court cannot consider facts outside the pleadings for purposes of this motion to dismiss. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). And even if it could, it must draw all reasonable inferences in favor of Ware, who alleges that Stanton took no remedial action against Jordan after he became aware of Jordan's sexual assaults. Doc. 1 ¶ 42; Doc. 18 at 7. Accepting this version of events, Stanton displayed deliberate indifference, as it is obvious that a supervisor should have immediately disciplined Jordan if he knew he was sexually abusing inmates. For similar reasons, given Ware pled that Stanton took no disciplinary action, the Court must find the Stanton took insufficient remedial action, as disciplinary action plainly would be warranted.

---

[2] If Stanton learned of the misconduct after June 2023, he would not have had notice, which would be fatal to a claim of failure to train or supervise. *See Brewington*, 902 F.3d at 803. But any such claim must wait until summary judgment.

On a final note, Stanton does not meaningfully grapple with the issue of proximate cause. But given that Ware's allegations indicate that Stanton knew about Jordan's sexual misconduct in time to prevent the abuse he endured, *see* Doc. 18 at 15, the Court concludes that the purported decision to not intervene proximately caused Ware's injuries. *See Harris v. City of Pagedale*, 821 F.2d 499, 508 (8th Cir. 1987) (holding that a city's failure to address a persistent problem of sexual misconduct by a police officer proximately caused the subsequent sexual assault committed by the same police officer). Accordingly, Ware has satisfied his burden to plead facts that show Stanton's failure to supervise violated his constitutional rights.

## II.     Failure to Train

Stanton and Ware both analyze the failure-to-train and failure-to-supervise claims in tandem. Doc. 17 at 9; Doc. 18 at 10–13. And for good reason. "Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (citation omitted). Here, however, the Court reaches divergent conclusions as to these supervisory claims because Ware has failed to establish proximate cause with respect to a failure to train.

For the most part, Ware's allegations about the NECC training program are conclusory: There was a failure "to properly train NECC staff about the Prison Rape Elimination Act and MODOC policies" and how to "properly supervise and monitor inmates." Doc. 1 ¶ 62. The only specific allegation Ware makes regarding NECC training procedures was that NECC staff were not trained "to report inappropriate relationships or interactions between NECC correctional officers and inmates." *Id*. But even accepting these allegations as true, Ware fails to show how any training deficiencies were the proximate cause of his injuries. *See Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("[The identified deficiency in a [] training program must be closely related to the ultimate injury such that the deficiency in training actually caused the [trainee's]

8

offending conduct.") (internal quotations omitted). For example, he does not suggest that additional training would have led Jordan's supervisors to intervene in time to prevent his abuse. And while Ware does in conclusory fashion argue in his brief that Stanton's "lack of . . . training of Defendant Jordan created the deficiencies that led to Plaintiff's injuries," Doc. 18 at 15, the Complaint is what matters, and it is certainly an "unwarranted inference" that training would have stopped Jordan from abusing Ware if the other allegations are true. *See Kulkay*, 847 F.3d at 641. Accordingly, the Court dismisses Ware's failure-to-train claims.

### III. Failure to Protect

Finally, Stanton argues that he cannot be held liable for a failure-to-protect claim because he is "involved in this matter only as Warden of NECC," and when "he became aware of any alleged unlawful contact between [Ware] and [] Jordan, he placed [] Jordan on administrative leave and removed him from the institution." Doc. 17 at 6. Additionally, he contends that, as warden, he was not Jordan's direct supervisor. *Id.* Once again, Stanton attempts to introduce facts outside the pleadings and ignores allegations in the Complaint.

Ware must make two showings to prevail on a failure-to-protect claim: "(1) an objective component, that there was a substantial risk of harm to the inmate, and (2) a subjective component, that the prison official was deliberately indifferent to that risk." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (alterations omitted). "A risk of sexual assault is 'substantial' if it 'occur[s] with sufficient frequency that prisoners are put in reasonable fear for their safety.'" *Dean v. Bearden*, 79 F.4th 986, 989 (8th Cir. 2023). "While a 'reign of violence' is not required to show a pervasive risk, ordinarily, a 'pervasive risk of harm' may not 'be shown by pointing to a single incident or isolated incidents.'" *Dunahue v. Culclager*, 2025 WL 868196, at *9 (E.D. Ark. Feb. 26, 2025) (quoting *Vandevender*, 970 F.3d at 977).

9

Stanton claims that Jordan was not his subordinate and that he took immediate remedial action, but those facts are not in the Complaint and cannot be considered for purposes of this motion to dismiss. *See Zean*, 858 F.3d at 526. Ware has alleged that Jordan sexually assaulted him several times and that Jordan previously abused other prisoners. Doc. 1 ¶¶ 21, 31. These allegations, taken as true, rise beyond a few "isolated incidents" and are sufficient to establish a substantial risk of harm to Ware. The Court has already explained above how the Complaint, viewed in the light most favorable to Ware, is sufficient to establish that Stanton was deliberately indifferent to the risk of Ware being sexually assaulted by Jordan. Thus, at this stage of litigation, Ware has met his burden of pleading facts that show his constitutional rights were violated by Stanton's failure to protect.

## IV.   Clearly Established Right

"Proving the [constitutional] violation itself, however, is only half the battle." *Dean*, 79 F.4th at 989. In addition, Ware also "has the burden to show that the law is clearly established," meaning "every reasonable official" in that position "would have understood" that the challenged conduct violated his rights. *Id.* (internal quotations omitted). "Though [he] need not provide a case directly on point, some existing precedent must place the question beyond debate, or the conduct must be so obviously unconstitutional that no precedent is needed." *Est. of Walker v. Wallace*, 881 F.3d 1056, 1061 (8th Cir. 2018).

To state what should be obvious, it is clearly established that a prison supervisor violates an inmate's constitutional rights if they know about a particular subordinate's ongoing pattern of sexual abuse against inmates but fail to take any corrective action.[3] *See, e.g., Williams v. Prudden*, 67 F. App'x 976, 977–78 (8th Cir. 2003); *Phelps v. Cabieles*, 2025 WL 2463081, at *4 (D. Neb.

---

[3] This section focuses only on the failure-to-train and failure-to-supervise violations because Ware did not establish that Stanton violated a constitutional right through a failure to train.

10

Aug. 26, 2025). Thus, by pleading facts that show that Stanton failed to supervise Jordan and failed to protect him by preventing the pattern of sexual abuse, Stanton cannot benefit from qualified immunity for those claims on a motion to dismiss.

## CONCLUSION

Viewing the allegations in the light most favorable to Ware, the Court concludes that Ware's allegations are sufficient to defeat Stanton's assertion of qualified immunity at this stage of litigation as to his failure-to-supervise and failure-to-protect claims. However, to the extent Ware asserts a failure to train claim, his allegations are insufficient, and Stanton is entitled to qualified immunity.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Stanton's [16] Motion to Dismiss, specifically dismissing the failure-to-train claims against Stanton.

So ordered this 22nd day of January 2026.

_____
ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE