UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

OMAR WARE, )
)
     Plaintiff, )
)
v. )    Case No. 2:24-CV-48-ZMB
)
ROBERT J. JORDAN, JR., et al., )
)
     Defendants. )

## MEMORANDUM AND ORDER

Before the Court is Defendant Robert Jordan's Motion to Dismiss. Doc. 26. Jordan argues that Plaintiff Omar Ware failed to exhaust his administrative remedies before bringing this action, requiring the dismissal of the claims pending against him. Because the Court agrees, it dismisses Jordan's claims against Ware without prejudice.

## BACKGROUND

### I.    Factual Background[1]

In 2023, Ware was incarcerated at the Northeast Correctional Center (NECC) in Bowling Green, Missouri—a prison run by the Missouri Department of Corrections (MDOC). Doc. 1 ¶¶ 1–2, 10. At all relevant times, Jordan was a correctional officer at NECC, and Defendant Clay Stanton was both his supervisor and warden of the facility. *Id.* ¶¶ 3–4, 11.

Ware alleges that Jordan sexually assaulted him at least six times between April and June 2023. *Id.* ¶¶ 12, 15, 20–21. In one instance, Jordan attempted to place his mouth on Ware's penis after giving him cigarettes. *Id.* ¶ 16. Ware managed to get away, but not before Jordan touched his genitals. *Id.* ¶ 17. Jordan later made a pass at Ware after he completed a shift at the "chow hall." *Id.* ¶¶ 24–25.

---

[1] As required at this stage, the Court accepts as true the well-pled facts from the Complaint. *See* Doc. 1; *infra* at 4–5.

Ware brushed off his advances, but Jordan grabbed Ware's genitals through his pants. *Id.* ¶ 25. When Ware told Jordan to stop, Jordan responded by "aggressively approaching" him, pushing him against the rail in the dining hall, and threatening him. *Id.* ¶ 26. Jordan made other unspecified attempts to sexually assault Ware "by grabbing [his] crotch and/or penis and attempting to grope [him]." *Id.* ¶ 15. He similarly used his position to sexually assault other inmates. *Id.* ¶¶ 22, 28–29.

## II.    Administrative Exhaustion and the MDOC Grievance Process

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory" and was designed "to reduce the quantity and improve the quality of prisoner suits [by] affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (citations and alterations omitted). To properly exhaust under the PLRA, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules," which are "defined . . . by the prison grievance process itself." *Justus v. Stamps*, No. 2:17-CV-80-SPM, 2019 WL 3288561, at *2 (E.D. Mo. July 22, 2019) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). In other words, an inmate must pursue the grievance process through "its final stage to an adverse decision on the merits." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quotations omitted).

Much like the similarly named federal statute, "[t]he Missouri prisoner litigation reform act requires exhaustion of administrative remedies prior to filing a civil action." *Cooper v. Minor*, 16 S.W.3d 578, 581 (Mo. banc 2000). Missouri likewise requires inmates to complete the prison's full grievance procedure "before the process is exhausted and the inmate can file suit in court." *Id.* at 580.

2

The Eighth Circuit previously summarized the three stages of MDOC's grievance procedure as follows:

> First, an inmate files an Informal Resolution Request (IRR). If dissatisfied with the response to the IRR, the inmate files a formal grievance. If dissatisfied with the response to the grievance, the inmate appeals within seven days, or the appeal is considered abandoned. After receiving the appeal response, the offender has exhausted the grievance process. Expiration of the response time limit at any stage of the process shall allow the grievant to move to the next stage of the process.

*Porter*, 781 F.3d at 450 (internal citations and quotation marks omitted). The Offender Rulebook emphasizes that "[prisoners] are required to complete [the offender grievance procedure] prior to filing a lawsuit in the federal courts." MO. DEP'T OF CORR., OFFENDER HANDBOOK 66 (2012), https://doc.mo.gov/sites/doc/files/2018-01/offender-rulebook-9-12-14.pdf. Critically, under MDOC protocol, "administrative remedies are not exhausted until the MDOC issues a grievance appeal response." *Dorsey v. Foley*, No. 4:24-CV-359-HEA, 2024 WL 1283288, at *4 (E.D. Mo. Mar. 26, 2024). While this Court has observed that MDOC has no time limit for sexual-abuse complaints,[2] it also recognized specific IRR procedures for Prison Rape Elimination Act (PREA) complaints. *See Trump v. Morgan*, No. 2:17-CV-42-CDP, 2020 WL 1531124, at *4, n.36 (E.D. Mo. Mar. 31, 2020).

## III.   Procedural Background

In May 2023, Ware submitted a PREA report about Jordan's sexual abuse, Doc. 30 at 4, 14–32, but he did not complete the normal grievance process, *see* Doc. 26-2; Doc. 37 at 2. Ware filed this case a year later. Doc. 1. His Complaint includes civil-rights claims against Stanton[3] and Jordan under 42 U.S.C. § 1983, as well as state-law tort claims against Jordan. *Id.* ¶¶ 45–87. Ware sued these Defendants in both their official and individual capacities. *Id.* ¶¶ 3–5.

---

[2] Given that there is no time limit on submitting complaints regarding offender sexual abuse, *Trump*, 2020 WL 1531124, at *4 n.36, it appears that Ware still could complete the MDOC grievance process for this incident.

[3] Stanton also moved to dismiss the claims against him, Doc. 16, which the Court granted only in part, Doc. 39. Oddly, unlike Jordan, Stanton did not raise the lack of administrative exhaustion as a ground for dismissal. *See* Docs. 16–17. However, Station has since asserted non-exhaustion as an affirmative defense in his Answer. Doc. 50.

3

Jordan moved to dismiss, primarily arguing that the claims against him are barred by the PLRA and Missouri PLRA due to Ware's failure to exhaust administrative remedies. Doc. 26-1. He also contends that the tort claims are time barred and that Ware failed to plead a Fourth Amendment violation. *Id.* Ware voluntarily dismissed his official-capacity claims but opposed the dismissal of the individual-capacity and tort claims against Jordan. Docs. 29–31. The motion was fully briefed after Jordan filed a reply, Doc. 34, but the Court nonetheless permitted Ware to file a sur-reply, Doc. 37.

<strong>LEGAL STANDARD</strong>

**I.      Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume

4

the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). The Court may not consider matters outside the pleadings, but "documents necessarily embraced by the complaint" are not matters outside the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

## II.      Administrative Exhaustion

As non-exhaustion is an affirmative defense under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Minter v. Bartruff*, 939 F.3d 925, 928 (8th Cir. 2019) (quoting *Jones*, 549 U.S. at 216). Rather, "the burden of raising and proving the absence of exhaustion" falls to defendants, *Porter*, 781 F.3d at 451 (citation omitted), with inmates required only to meet any evidence presented by the defense, *see Haley v. Galloway*, 92 F. App'x 379, 380 (8th Cir. 2004)). When administrative exhaustion is raised in a motion to dismiss, the Eighth Circuit has approved consideration of "underlying administrative documents filed by the parties." *Elliott v. Wilson*, 2017 WL 1185213, at *8 n.9 (D. Minn. Jan. 17, 2017) (citations omitted).[4] Additionally, an inmate's subjective belief that procedures are not applicable to their grievance "is not determinative." *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citation omitted).

---

[4] Even if the instant motion were converted to a motion for summary judgement, *see* FED. R. CIV. P. 12(d) (requiring the Court to treat the motion "as one for summary judgement under Rule 56" if the Court does not exclude matters outside the pleadings), the Court reach the same conclusion. Significantly, both Ware and Jordan had ample opportunity to submit evidence on the issue of exhaustion, and each party has done so, *see* Doc. 26-2; Doc. 30 at 14–32.

**DISCUSSION**

As his main basis for dismissal, Jordan asserts that Ware "did not exhaust the available administrative remedies required under [both the federal and state] PLRA and MDOC procedures before bringing suit." Doc. 26-1 at 5, 7–9. In support, Jordan attaches Ware's grievance logs as evidence that he did not grieve this incident, even though he did follow the normal protocol for a separate claim of sexual abuse around the same time. *Id.* at 6; *see* Doc. 26-2 at 3–8. Ware counters that he did exhaust his administrative remedies because he "reported and submitted a complaint regarding the sexual abuse by Defendant Jordan." Doc. 30 at 4, 14–32. Ware acknowledges that his complaint was filed as a PREA report, rather than under MDOC's normal grievance procedure, but he maintains that his efforts were sufficient. Doc. 37 at 2, 5. Jordan does not dispute that Ware filed a PREA report but argues that "such participation is not part of nor a substitution for the requisite offender grievance procedures." Doc. 34 at 3. Based on its interpretation of relevant law, the Court agrees with Jordan and thus grants his motion to dismiss

I.   **MDOC Exhaustion Procedure**

The issue of exhaustion in this case boils down to a dispute over whether PREA reports are a valid substitute for MDOC's grievance process for purposes of administrative exhaustion. Jordan emphasizes that the Missouri Offender Rulebook "does not state that prisoners alleging sexual abuse are relieved from undergoing the grievance process altogether." Doc. 34 at 5. Meanwhile, Ware claims that the MDOC Procedure Manual's policy on "Offender Sexual Abuse and Harassment" ("Manual D1-8.13") exempts claims of sexual abuse from the general grievance procedure. *Id.*; *see* Doc. 37–2. While MDOC procedures excuse inmates who allege sexual abuse from participating in informal resolution or from complying with routine deadlines, PREA reports are not a substitute for the normal grievance process.

6

Ware does not dispute MDOC's general three-step grievance procedure. Doc. 37 at 2. But he highlights that, under Manual D1-8.13, "[t]he department will not require an offender to use any informal grievance or complaint process, or to otherwise attempt to resolve with staff members, an alleged incident of sexual abuse." *Id.* (quoting Doc. 37-1 at III(F)(8)(a)). As such, Ware argues, the "plain and unambiguous language of [the cited provision] exempts an inmate from having to use any informal grievance or complaint process when making a complaint of sexual abuse or assault." *Id.* (citation omitted). On this basis, Ware contends that his PREA report was sufficient to satisfy exhaustion. But this position does not follow from the quoted language, particularly when considered in light of MDOC's broader grievance scheme.

As an initial matter, the line Ware quotes from Manual D1-8.13 is far more modest than he suggests. The most natural reading of this provision is that MDOC will not require inmates to attempt informal resolution in order to report sexual abuse, which is unsurprising given that Manual D1-8.13 itself provides a variety of alternative channels for such complaints (e.g., anonymous hotline, third-party reporting). *See* Doc. 37-1 at III(F). However, Manual D1-8.13 in no way indicates that MDOC has excused compliance with its general exhaustion requirement if an inmate wishes to pursue litigation as opposed to other remedies. *See* OFFENDER HANDBOOK at 66. Indeed, the few states that have elected a complete exhaustion carveout have said so explicitly. *See Woodard v. McGhee*, 2020 WL 9348486, at *12 (W.D. Ark. Nov. 13, 2020) (highlighting a regulation expressly recognizing that "any allegation concerning an incident of sexual abuse or sexual harassment *shall be deemed exhausted* if official documentation confirms that the inmate reported the incident to facility staff." (emphasis added)).

But even if Ware is correct that "Paragraph 8 exempts an inmate from having to use any *informal* grievance or complaint process," Doc. 37 at 2 (emphasis added), it does not follow that a formal grievance and appeal are no longer required. Taking the plain language of the Offender

7

Rulebook and Manual D1-8.13 together, the only sensible way to harmonize the provisions is to find that—at most—MDOC has excused inmates from IRR. Significantly, Manual D1-8.13's carveout specifies only "informal grievances," implicitly excluding formal grievances and appeals. *See* Doc. 37-1 at III(F)(8)(a). Had MDOC intended PREA reports to function as a full substitute to the standard grievance procedure, offenders surely would be excused from using *any* grievance or complaint process, not just the "informal" ones. Manual D1-8.13's command that "[s]taff members are to address grievances or complaints for allegations of sexual abuse and harassment in accordance with the department procedure regarding offender grievance" confirms that the standard grievance procedure is not wholly supplanted. *See* Doc. 37-1 at III(F)(8)(c). On the other hand, Ware's reading of the Offender Rulebook and Manual D1-8.13 would mean that an inmate could exhaust administrative remedies without following any step in the grievance process, and it is far from clear what form of PREA report would be sufficient (e.g., anonymous hotline, third-party report). For all of these reasons, Ware's interpretation must be rejected.

On a final note, this interpretation fits with the near-consensus view that submitting a PREA report generally does not constitute exhaustion for PLRA purposes, even when offenders are offered multiple avenues to submit complaints about sexual assault. *See Woodard*, 2020 WL 9348486, at *11–12 (collecting cases).[5] And while the Court certainly appreciates that grievance procedures vary by state, it finds that the Arkansas policy discussed in *Woodard* is functionally equivalent to MDOC's procedures. *Id.* at 12; *see* Doc. 37-1 at III(F). Accordingly, this Court finds that Ware did not exhaust his administrative remedies by submitting a PREA report.

---

[5] The *Woodard* Court helpfully notes that "there appear to be only two instances where district courts have permitted a PREA report to be used to meet the PLRA exhaustion requirement"—(1) "when the prison grievance policy contains explicit language deeming a PREA report as sufficient to meet the PLRA exhaustion requirement" and (2) "when the grievance policy in question explicitly prohibits an inmate from using the grievance process to report PREA complaints." 2020 WL 9348486, at *12. Neither condition applies here.

8

## II.   Futility of Administrative Remedies

Perhaps anticipating this conclusion, Ware argues that, "even assuming MDOC's grievance process other than the IRR applies to Ware's claim for sexual assault, the facts establish that Plaintiff Ware was not required to [formally grieve or] appeal his complaint under MDOC's grievance process." Doc. 37 at 4. His argument is premised on futility: "Ware's complaint of sexual abuse was investigated and substantiated [when] Jordan's employment with the Department of Corrections was terminated[, so] there was not an adverse decision [to appeal]." *Id.* But Ware is simply mistaken that this perceived futility relieved him of the exhaustion requirement.

In *Booth v. Churner*, the Supreme Court rejected futility as an exception to administrative exhaustion under the PLRA. 532 U.S. 731, 739, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise . . . regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."); *see also Ross*, 578 U.S. at 648. ("The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"). The Supreme Court has recognized only three situations where administrative remedies are "unavailable" to an inmate:

> (1) when, despite what regulations or guidance materials may promise, an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when an administrative remedy is "so opaque that it becomes, practically speaking, incapable of use," specifically because "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Stearns v. Inmate Servs. Corp.*, 2017 WL 3381528, at *3 (E.D. Ark. July 18, 2017) (quoting *Ross*, 578 U.S. at 643–44).

9

Ware does not contend that administrative remedies were unavailable to him on any of these three recognized grounds. Futility is not the same as unavailability. Nor has Ware argued that he was prevented from filing a formal grievance because Jordan's employment was terminated. Rather, Ware concludes that his complaint "was substantiated" and suggests that he was not required to participate in the MDOC grievance procedure as a result. Doc. 37 at 4.

From the outset, Ware's futility argument founders on the mistaken premise that Jordan's termination was the only remedy he could have requested. Not so. For example, as in the *Trump* decision he cites, Ware could have requested relocation as a temporary safety measure or a broader change in NECC training policies and other procedures (especially given that he raises these issues in his claims against Stanton). *See* 2020 WL 1531124, at *1 (finding exhaustion where plaintiff requested both relocation and policy changes during IRR for sexual harassment). Additionally, Ware could have requested relief geared toward future litigation. Indeed, during IRR for a sexual-assault complaint against another corrections officer, Ware asked the NECC to change its training procedures concerning strip searches and also sought remedies that more directly relate to litigation, including "discovery," "monetary compensation," "punitive damages," and "attorneys fees." Doc. 26-2 at 4, 6–7. Thus, even if futility were an exception, it would not apply here.

But even assuming that Ware was completely satisfied with NECC's remedial action regarding Jordan and could gain nothing from the grievance process, exhaustion is still mandatory. *See Wallace v. Crouch*, No. 4:21-CV-1036 RLW, 2022 WL 16833980, at *2 (E.D. Mo. Nov. 9, 2022) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citation omitted); *see also Booth*, 532 U.S. at 740–41 ("Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process

simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms"). Likewise, while Ware may have been mistaken about the availability of remedies, that mistake will not excuse his failure to exhaust. *See Porter*, 781 F.3d at 451 (holding that, for a prisoner to "exhaust all available remedies," the prisoner "needed to appeal from the . . . grievance response, even if he believed an appeal would be ineffective" and that when a prisoner accepts an administrative remedy, they abandon their claim).

In sum, Ware has failed to demonstrate a lack of available remedies, so there is no basis for excusing his failure to exhaust, and the Court must dismiss his claims against Jordan as a result.[6]

**CONCLUSION**

Accordingly, because Plaintiff Omar Ware failed to exhaust his administrative remedies before bringing this action, the Court **GRANTS** [26] Defendant Robert Jordan's Motion to Dismiss and **DISMISSES** the remaining claims against him without prejudice.

So ordered this 3rd day of March 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

---

[6] This eliminates the need for an inquiry as to whether Ware's tort claims are time-barred or whether his Fourth Amendment rights were violated.

11